IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FRANCI LOU RIGGSBEE,           )
                               )
         Plaintiff,            )
                               )
    v.                         )   No. 04 C 6292
                               )
                               )
JO ANNE BARNHART, Commissioner )
of Social Security,            )
                               )
         Defendant.            )

# MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Franci Lou Riggsbee's ("Riggsbee") motion for summary judgment. This matter is also before the court on Defendant's motion for summary judgment. For the reasons stated below, we grant Riggsbee's motion for summary judgment and deny Defendant's motion for summary judgment.

# BACKGROUND

Riggsbee filed a claim for social security disability insurance benefits and supplemental social income in August of 2000. Riggsbee's claim was denied and

1

Riggsbee filed a request for reconsideration, which was also denied. Riggsbee then appeared with counsel before an Administrative Law Judge ("ALJ") for a hearing on the matter on October 15, 2002. On September 26, 2003, the ALJ issued a decision denying Riggsbee's claim. (R. 16-26). Riggsbee then filed a request for review of the ALJ's decision with the Appeals Council, which was denied. Riggsbee seeks a review of the ALJ decision in the instant action.

## LEGAL STANDARD

A reviewing court will uphold an ALJ's decision if it is supported by "substantial evidence" in the record and the ALJ applied the correct legal standards. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). The Seventh Circuit defines "[s]ubstantial evidence" as what a "reasonable mind might accept as adequate to support a conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). When determining if substantial evidence exists, the court must review the record as a whole but is not allowed to substitute its judgment for the ALJ's by "reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Williams v. Apfel*, 179 F.3d 1066, 1071-72 (7th Cir. 1999). Deference should be given to an ALJ's determinations relating to credibility and should be reversed only if the determinations are "patently wrong." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000)(quoting *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990)). By contrast, the ALJ's legal conclusions are reviewed de novo. *Nelson v.*

*Bowen*, 855 F.2d 503, 506 (7th Cir. 1988); *Aidinovski v. Apfel,* 27 F.Supp.2d 1097, 1101 (N.D. Ill. 1998). An ALJ must provide some explanation that would allow the parties to understand his reasoning for his decision. *See Clifford*, 227 F.3d at 872 (stating that "[w]hile the ALJ is not required to address every piece of evidence, he must articulate some legitimate reason for his decision. . . [and] he must build an accurate and logical bridge from the evidence to his conclusion."). Further, in reviewing the decision, the court must confine its review to the explanation and reasoning given by the ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002).

## DISCUSSION

### I. Credibility of Riggsbee

Riggsbee argues that the ALJ erred in his decision when he addressed Riggsbee's credibility. (Pl.'s Mot. 12-15). An ALJ's credibility determination is entitled to substantial deference and "there has developed a firm and tenable rule of law 'that an ALJ's credibility determination will not be disturbed unless it patently wrong.'" *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004)(quoting *Cannon v. Apfel*, 213 F.3d 970, 977 (7th Cir. 2000)). Riggsbee's arguments concerning the ALJ's credibility determinations fail to establish how the ALJ's decision was in error. For example, Riggsbee points to evidence from her treating physicians that she claims rebuts the ALJ's credibility determinations. (Pl.'s Mot. 13). However,

3

the record reveals that such evidence from Riggsbee's treating physicians was not even made part of the record until after the ALJ issued his decision. (Pl.'s Mot. 8, 13; R. 394-426). In addition, Riggsbee argues that the ALJ's remark that Riggsbee's previous work history was "sporadic" should not have been considered as a factor in her credibility assessment since Riggsbee now suffers from certain medical limitations. (Pl.'s Mot. 14). The record reflects that the ALJ did not make this statement in reference to any of Riggsbee's current medical limitations, but rather only to emphasize that Riggsbee was not steadily employed before she allegedly suffered from such limitations. (R. 24). Riggsbee also points to the ALJ's statements concerning observations he made with respect to Riggsbee's "unpersuasive appearance and demeanor" at the hearing and argues that such observations deserve further explanation. (Pl.'s Mot. 14; R. 24). The observations made by the ALJ at hearing do not warrant further explanation since they were subjective in nature. *Herron v. Shalala,* 19 F.3d 329, 335 (7th Cir. 1994)(stating that the "ALJ is in the best position to observe witnesses" at the hearing). Further, such observations are not considered "serious errors" in an ALJ's credibility analysis in any event. *See Carradine,* 360 F.3d at 758(indicating that "credibility determinations" with respect to a claimant's demeanor at an ALJ hearing do not constitute a "serious error[]" in an ALJ's reasoning); The remainder of Riggsbee's arguments simply criticize the ALJ for considering any medical evidence unfavorable to Riggsbee's credibility, including medical reports from a physician

4

who had previously treated Riggsbee. (Pl.'s Mot. 14-15; R.24). Based on a review of the evidence before the ALJ at the time he issued his decision, we find that the ALJ's credibility determinations are supported by the record. Accordingly, we find that Riggsbee has failed to establish that the ALJ's credibility analysis and findings were "patently wrong." *Apfel*, 213 F.3d at 977.

II. Residual Functional Capacity

In determining whether a claimant is disabled, the Commissioner of the Social Security Administration employs a five-step analysis. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f); *Rice v. Barnhart*, 384 F.3d 363, 365 (7th Cir. 2004). In the first two steps, the ALJ determines "whether a claimant is not presently working, and second, whether the complained of impairment(s) are of the required duration and significantly limit the claimant's ability to work." *Id.*; 20 C.F.R. §§ 404.1520(a)-(c)), 416.920(a)-(c)). In step three, the ALJ compares evidence of impairments with "a list of impairments presumed severe enough to preclude any gainful work." *Rice*, 384 F.3d at 365; 20 C.F.R. pt. 404, subpt. P, App. 1. If the claimant's impairment "meets or equals one of the listed impairments, the claimant qualifies for benefits and no further inquiry is necessary." *Rice*, 384 F.3d at 365; 20 C.F.R. §§ 404.1520(d), 416.920(d). However, if the claimant's impairment is not sufficient under step three, the court proceeds on to steps four and five. *Rice*, 384 F.3d at 365.

In the fourth step of the analysis, the court determines whether the "claimant's residual functional capacity," which is defined as the tasks "a claimant can still do, despite his or her limitations," *Rice*, 384 F.3d at 365; 20 C.F.R. § 404.1545(a), "will allow the claimant to pursue her past work." *Rice*, 384 F.3d at 365; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant's impairment "precludes the performance of past work, the claimant's RFC, age, education, and work experience are considered to determine if other work exists that would accommodate the claimant. *Rice*, 384 F.3d at 365; 20 C.F.R. §§ 404.1520(f), 416.920(f).

In the instant action, the ALJ applied the five-step sequential analysis set forth above and considered all of the relevant and available medical evidence in the case, including the fact that Riggsbee formerly worked as a waitress. (R. 21-26). In regards to the ALJ's assessment of Riggsbee's RFC, the ALJ stated the following:

> [Riggsbee's] medically determinable impairments preclude the following work related activities: lifting more than 20 pounds occasionally or more than 10 pounds frequently; performing jobs in environments containing any respiratory irritants in moderate levels; working with cleaning products on a regular basis; and unable to work in relative extremes of heat or cold or areas of high humidity. . . [] [Riggsbee's] past relevant work as [a] waitress did not require the performance of work-related activities precluded by the residual functional capacity limitations reported above.

(R. 25-26). The ALJ then concluded that Riggsbee was not "under a 'disability' for purposes of titles II and XVI of the Social Security Act." (R. 25-26).

In Riggsbee's motion for summary judgement, Riggsbee argues that the ALJ

incorrectly applied step four of the sequential analysis when he addressed Riggsbee's RFC. Specifically, Riggsbee contends that the ALJ's findings in this regard are "inconsistent" with evidence from Riggsbee's own treating physicians and with the testimony of an independent vocational expert at the hearing. (Pl.'s Mot. 7-12).

### A. Evidence from Riggsbee's Treating Physicians

An ALJ "cannot err by failing to have considered evidence never tendered to him." *Keys v. Barnhart*, 347 F.3d 990, 993 (7th Cir. 2003). Riggsbee argues that the ALJ, in assessing Riggsbee's RFC, "used none of the evidence from [Riggsbee's] treating doctors, including the evidence of Dr. Andaleon, her treating physician." (Pl.'s Mot. 8). Riggsbee contends that the ALJ's decision is therefore "inconsistent" with reports and medical findings from her treating physicians. (Pl.'s Mot. 8-12). Apart from the fact the evidence from Riggsbee's treating physicians was unreliable, in that it included an unsigned RFC assessment report and a series of incomplete medical questionnaires, the court notes that such evidence was not even part of the record before the ALJ issued his decision. (Pl.'s Mot. 9; R. 394-426). Instead, the record reflects that Riggsbee first submitted such evidence to the Appeals Council, approximately four months after the ALJ issued his decision denying Riggsbee's claim. (R. 16; 394-426). Since evidence from Riggsbee's treating physicians was never presented to the ALJ, Riggsbee's argument that the

ALJ erred is without merit. *Keys*, 347 F.3d at 993.

## B. Evidence From The Vocational Expert

The "function" of a vocational expert at an ALJ hearing is to decide "which jobs the applicant for disability benefits can do and how many such jobs exist in the applicant's state." *Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004). In the ALJ's decision concluding that Riggsbee could perform work as a waitress, the ALJ relied on an opinion from Mr. Christopher Yep ("Mr. Yep"), an independent vocational expert present at the hearing. (R. 25-26). Riggsbee argues that the ALJ's decision in this regard was inconsistent with a subsequent opinion offered by Mr. Yep at the same hearing. Specifically, Riggsbee argues that Mr. Yep's later opinion "eliminated" the possibility of Riggsbee being able to work as a waitress. (Pl.'s Mot. 11). Accordingly, Riggsbee claims the ALJ failed to state that Riggsbee had any transferable work skills. (Pl.'s Mot. 12). Defendant has acknowledged that Mr. Yep did at one point testify that Riggsbee "could not perform her past work as a waitress", but claims that such testimony is "not relevant". (Def.'s Mot. 14, n. 6).

A vocational expert's opinion, which is sometimes based on a "hypothetical" question presented by the ALJ, should take into account all of evidence the vocational expert has been tendered relating to the claimant's "physical, psychological, or cognitive limitations." *Young v. Barnhart*, 362 F.3d 995, 1003-05 (7th Cir. 2004). The "validity" of such an opinion "depends on whether the [ALJ]

accurately described [the claimant's] condition" to the vocational expert. *Barrett*, 355 F.3d at 1067. Where an ALJ bases his decision on an opinion of a vocational expert gathered from a "fundamentally flawed" hypothetical question, the ALJ's decision "cannot stand." *Young,* 362 F.3d at 1005.

At the hearing, Mr. Yep stated that he was familiar with the different skill levels in Social Security Act and also indicated that he had the opportunity to review Riggsbee's file and listen to her testimony. (R.. 450-51). However, before eliciting Mr Yep's opinion, the ALJ presented Mr. Yep with a series of hypotheticals. (R..450-54). The ALJ's hypotheticals involved a claimant with specific capabilities that became more "restricted" over the course of the ALJ's questions to Mr. Yep. (R. 452-54). Specifically, as the ALJ placed more limitations on the hypothetical claimant, Mr. Yep's opinions as to the capability of such a claimant to perform certain types of work changed. For example, under one hypothetical scenario, Mr. Yep stated that Riggsbee could perform work as a waitress, while under another scenario with stricter conditions, Mr. Yep concluded that Riggsbee could not work as waitress. (R. 452-56).

At the time the ALJ issued his decision, the ALJ did not have the benefit of the Seventh Circuit's decision in *Young. Young,* 362 F.3d at 1003-05. In *Young*, the court classified the exact "approach" of questioning employed by the ALJ to Mr. Yep as "flawed" since under such an approach the vocational expert remains

9

confined to the "facts presented in the question" and is thus unable to consider other relevant information he may have previously "absorbed" while reviewing the claimant's record. *See Young,* 362 F.3d at 1003(stating that it is "important" that a vocational expert "understand the full extent of the applicant's disability".). Since the hypotheticals by the ALJ were based on specific facts, which by their own terms prevented Mr. Yep from considering other relevant information outside of those specific facts, we find that the ALJ's hypotheticals were "fundamentally flawed" and that Mr. Yep's opinions are therefore not reliable. *Id.* Accordingly, the ALJ's decision, which "hinged" on one of Mr. Yep's opinions to conclude that Riggsbee was not disabled, "cannot stand." *Id.* at 1005.

## CONCLUSION

Based on the foregoing analysis, we grant Riggsbee's motion for summary judgment, deny Defendant's motion for summary judgment, and remand this action to the ALJ to proceed in a manner consistent with this opinion.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: May 31, 2005